WILLIAM M. SHERNOFF #38856
wshernoff@shernoff.com
TRAVIS M. CORBY #268633
tcorby@shernoff.com
**SHERNOFF BIDART ECHEVERRIA LLP**
301 N. Cañon Drive, Suite 200
Beverly Hills, California 90210
Telephone: (310) 246-0503
Fax: (310) 246-0380

JERRY FLANAGAN #271272
jerry@consumerwatchdog.org
**CONSUMER WATCHDOG**
6330 San Vicente Blvd., Suite 250
Los Angeles, California 90048
Telephone: (310) 392-0522
Fax: (310) 392-8874

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH LASTER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, a corporation; and DOES 1 through 10,<br><br>    Defendants. | Case No.: 17-CV-00851 AB (JEMx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:** January 11, 2019<br>**Time:** 10:00 a.m.<br>**Dept.:** 7B |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that Plaintiff Keith Laster, individually and on behalf of others similarly situated will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant final approval of the proposed class action settlement entered into by the Plaintiff and Defendant Hartford Life and Accident Insurance Company, on January 11, 2019 at 10:00 a.m. or at such other time as may be set by the Court, at 350 West First Street, Los Angeles, California 90012, Courtroom 7B, before the honorable Andre Birotte Jr.

Plaintiff seeks final approval of this class action settlement. The Motion is based on this Notice of Motion, the Brief in Support of the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any other matter raised or submitted at the hearing, and all of the documents in the record.


Dated: December 14, 2018          SHERNOFF BIDART ECHEVERRIA LLP


                                  By:  /s/ Travis M. Corby
                                       William Shernoff
                                       Travis M. Corby

                                  CONSUMER WATCHDOG

                                  By:   /s/ Jerry Flanagan
                                        Jerry Flanagan

                                  Attorneys for Plaintiff Keith Laster and on
                                  behalf of all others similarly situated

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

I.  INTRODUCTION .............................................................................................1

   A.  LITIGATION HISTORY .............................................................................2

III. TERMS OF SETTLEMENT AGREEMENT ...............................................3

   A.  Class Definition .............................................................................................3

   B.  Monetary Relief .............................................................................................4

     1.  *Settlement Fund* .......................................................................................4

     2.  *Class Representative Award* ..................................................................5

   C.  Injunctive Relief ...........................................................................................5

   D.  Release...........................................................................................................6

     1.  *Release and waiver* ..................................................................................6

     2.  *Order of dismissal* ..................................................................................6

   E.  Attorney's fees and expenses .......................................................................7

IV.  CLASS NOTICE ...............................................................................................7

   A.  Class Member List .......................................................................................7

   B.  Notice Plan ....................................................................................................7

     1.  Summary Settlement Notice ....................................................................7

     2.  Settlement Website ..................................................................................8

i

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS



     3.  Toll-free number ................................................................8

III.  THE SETTLEMENT SHOULD BE APPROVED ...........................................8

  A.  The Settlement benefits from a presumption of reasonableness because it is the product of arm's-length settlement negotiations. .....................................11

  B.  The Settlement is substantively fair and satisfies the Ninth Circuit settlement approval standards. ......................................................12

     1.  *The strength of Plaintiff's case and the risk, expense, complexity and likely duration of continued litigation.*..............................12

     2.  *The amount offered supports approval of the settlement* ............................14

     3.  *The extent of discovery complete and the stage of the proceeding supports approval of the settlement.*........................................16

     4.  *The experience and views of counsel support approval of the settlement.* .16

     5.  *The Presence and views of a government participant supports approval of the settlement.* ...........................................17

     6.  *The reaction of Class members to the proposed settlement supports approval of the settlement*........................................18

     7.  *The absence of collusion precludes additional scrutiny and favors final approval.* ........................................................18

  C.  CAFA Compliance ........................................................20

IV.  THE NOTICE PLAN COMPLIED WITH THIS COURT'S PRELIMINARY APPROVAL ORDER AND APPLICABLE LEGAL STANDARDS ...................20

V.  THE COURT SHOULD ALSO FINALLY APPROVE CERTIFICATION OF THE SETTLEMENT CLASS ...................................................21

VI.  CONCLUSION ........................................................22

ii

# TABLE OF AUTHORITIES

1

2                                                                                       **Page**

3   **Cases**

4   *7-Eleven Owners for Fair Franchising v. Southland Corp.*,
       85 Cal. App. 4th 1135, 1152–53 (2000) ...............................................................18

5

6   *Churchill Vill. LLC v. Gen. Elec.*,
       361 F.3d 566, 577 (9th Cir. 2014)..............................................................18, 21

7

8   *Eisen v. Carlisle & Jacquelin*,
       417 U.S. 156, 178 (1974) .........................................................................22

9

10  *Feyko v. AAD Partners LP*, No. LACV 11-05511 DDP (PJWx)
       2014 WL 12572678, at *7 (C.D. Cal. Mar. 7, 2014) .........................................11

11

12  *Garner v. State Farm Mut. Auto. Ins. Co*,
       2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) ........................................18

13

14  *Hanlon v. Chrysler Corp.*,
       150 F.3d 1011, 1025 (9th Cir. 1998).........................................................9, 19

15

16  *In re Bluetooth Headset Prod. Liab. Litig.*,
       654 F.3d 935, 947 (9th Cir. 2011) .......................................................................19

17

18  *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901,
       1992 WL 226321, at *2-3 (C.D. Cal. June 10, 1992) .......................................17

19

20  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT,
       2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) .........................................11

21

22  *In re Howrey LLP*, No. 14-cv-03062-JD,
       2014 WL 3427304, at *5 (N.D. Cal. July 14, 2014).........................................10

23

24  *In re Immune Response Sec. Litig.*,
       497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)................................................9, 16

25

26  *In re Mego Fin. Corp. Sec. Litig.*,
       213 F.3d 454, 458 (9th Cir. 2000)........................................................10, 12, 16

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

*In re Omnivision Techs. Inc.*,
   559 F. Supp. 2d 1036, 1040-41 (N.D. Cal. 2008) ................................... 10, 16, 17

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294, 305 (3d Cir. 2005) ...................................................................... 18

*In re Synocor ERISA Litig.*,
   516 F.3d 1095, 1101 (9th Cir. 2008) ............................................................... 10

*Johansson-Dohrmann v. CBR Sys.*, No. 12-cv-1115-MMA (BGS),
   2013 WL 3864341, at *4 (S.D. Cal. July 24, 2013) ........................................ 12

*Linney v. Cellular Ala. P'Ship*,
   1997 WL 450064, at *5 (N.D. Cal. 1997) .......................................................... 9

*Martin v. Ameripride Services, Inc.*,
   2011 WL 2313604, at *5 (S.D. Cal. June 9, 2011) ........................................... 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523, 528 (C.D. Cal. 2004) ............................................................. 17

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*,
   688 F.2d 615, 625 (9th Cir. 1982) .................................................................... 10

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615, 625 (9th Cir. 1982) ............................................................ 9, 11, 12

*Perkins v. Linked In Corp.,*
   2016 WL 613255, at *3 (N.D. Cal. 2016) ........................................................ 18

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948, 965 (9th Cir. 2009) ............................................................... 11, 17

*Satchell v. Fed. Express Corp.*, No. C03-2659 SI,
   2007 WL 1114010, at *4 (N.D. Cal. April 13, 2007) ...................................... 11

*Silber v. Mabon*,
   18 F.3d 1449, 1454 (9th Cir. 1994) .................................................................. 21

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

iv

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*Staton v. Boeing Co.,*
    327 F.3d 938, 959(9th Cir. 2003)....................................................................9, 10

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943, 950 (9th Cir. 1976)......................................................................10

*Vanwagoner v. Siemens Indus., Inc.,* No. 2:13-cv-01303-KJM-EFB,
    2014 WL 7273642, at *9 (E.D. Cal. Dec. 17, 2014) ........................................10

*Weeks v. Kellogg Co.,* No. CV 09-08102 (MMM) (RZx),
    2013 WL 6531177, at *10 (C.D. Cal. Nov. 23, 2013).......................................10

**Statutes**
28 U.S.C.
    § 1715 ..................................................................................................................18
    § 1715(b) .............................................................................................................20

**California Business & Professions Code**
    § 17200 .................................................................................................................2

**Federal Rules of Civil Procedure**
    23 ...................................................................................................................24, 25
    23(a) ..............................................................................................................15, 25
    23(b)(2).................................................................................................................15
    23(b)(3).................................................................................................................15
    23(c)(2)(B) ...........................................................................................................24
    23(e).......................................................................................................................9
    23(e)(1).................................................................................................................24

**Other Authorities**
Schwarzer, Tashima & Wagstaffe,
    Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10:573 (Rutter Group 2006).....22

v

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff is proud to present to the court the settlement of this statewide class action, which provides important benefits to class members who alleged that Hartford Life And Accident Insurance Company ("Hartford") denied or terminated valid waiver-of-premium benefits by using a definition of "Total Disability" that is contrary to California law. Declaration of Travis Corby In Support of Final Approval of Class Action Settlement ("Corby Decl."), ¶ 4, 5, 8.

The settlement was achieved through arm's-length negotiation in two separate full-day sessions with a mediator. *Id.* at ¶ 8. The parties reached the settlement before the resolution of two motions filed by Hartford that raised significant attacks on the class action: a motion to dismiss and a motion to strike class allegations. *Id.* at ¶ 7.  In light of the risks of continued and prolonged litigation, and the immediate benefits to the 143 class members (in the form of individualized payments to members and injunctive relief), the settlement is deserving of final approval. *Id.* at ¶ 20.

More specifically, after settlement costs and attorney fees are deducted from the $1,500,000 settlement fund, there will be approximately $930,000 to allocate to the 143 class members. *Id.* at ¶ 23. These will be made on an individualized basis by a special master, and payments will include an assessment of the value of, depending on the class member, death benefits, refund of premiums, partial payment of the face value of the policies, and other unpaid claims. *Id.* at ¶ 23. These payments are meant to compensate each class member for the damages Plaintiff alleges due to Hartford allegedly administering the claims under an improper standard for determining whether the class member was "Totally Disabled" to receive the waiver-of-premium benefit. In addition, injunctive relief will require Hartford to confirm its adoption of a standard for determining "Total Disability" that is consistent with California law. Corby Decl., Exhibit A (*Settlement Agreement*), §III.B.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

In determining whether final approval is warranted, the issue before the Court is whether the Settlement is fair, reasonable and adequate. The settlement was reached through serious, informed, non-collusive, arm's-length bargaining, creates real benefits for the class, and is within the range of an acceptable settlement, and therefore meets the applicable standards for constituting a fair, reasonable, and adequate settlement.  Moreover, as of December 12, 2018, no class members have objected or opted out.[1]  Declaration of L. Stephens Tilghman ("Tilghman Decl.") ¶ 10, attached as Exhibit C to the Corby Decl.

Furthermore, notice has been sent to the class members according to the Court's Preliminary Approval Order, which the Court also determined to be adequate under the applicable standards. And as for the certification of the Class, which the Court also preliminarily approved in its order, none of the facts supporting or concerning Plaintiff's satisfaction of Rule 23 have changed. Accordingly, Plaintiff hereby moves the Court for final approval.

## A.    LITIGATION HISTORY

On December 30, 2016, Plaintiff filed a class action complaint in the Superior Court for the State of California for the County of Los Angeles.  Corby Decl., ¶ 5.  The Complaint is attached as Exhibit K to the Corby. Decl.  Plaintiff, individually and on behalf of all others similarly situated, alleged that Hartford improperly denied policyholders' valid waiver of life insurance premium claims based on Hartford's use of a definition of "Total Disability" in the life insurance contracts that was contrary to California law.  Plaintiff asserted the following claims in the complaint: (1) violation of California Business & Professions Code section 17200, *et seq.* (unlawful); (2) violation of California Business & Professions Code section 17200, *et seq.* (unfair); (3) breach of contract; (4) breach of duty of good faith and fair dealing; and (5) declaratory relief.  *Id.* at ¶ 5.

---

[1] The deadline to opt-out or object is December 17, 2018 (Tilghman Decl., ¶ 10), which is after the due date of this memorandum.  Plaintiffs will provide a final declaration from the settlement administrator before the Final Fairness Hearing.

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

On February 2, 2017, Hartford removed this action to federal court. *Id.* at ¶ 6.

On April 10, 2017, Hartford filed a motion to dismiss certain claims, a motion to strike class action allegations, and a motion to stay pending resolution of the motion to dismiss and motion to strike class action allegations. Prior to the Court ruling on any of these pending motions, the parties entered into a settlement agreement. *Id.* at ¶ 7.

Class counsel and counsel for Hartford conducted arm's-length negotiations for a settlement of this action in two separate full-day sessions with the Honorable Peter D. Lichtman (Ret.), taking into account: (a) the merits of the complaint or the lack thereof; (b) the strength of Plaintiff's case compared to the amount of Hartford's settlement offer; (c) the time, expense and effort necessary to litigate the action to conclusion; (d) possibilities of success weighed against the possibilities of loss; (e) the range of potential judgment values, if any should be awarded; (f) the complexity of the issues in the action; (g) the risks inherent in protracted litigation; (h) the magnitude of benefits to be gained from immediate settlement in light of both the maximum potential of a favorable outcome with the attendant expense and likelihood of an unfavorable outcome; (i) the possibility of no recovery to any potential class members whatsoever; (j) the merits of Hartford's motion to dismiss and motion to strike class action allegations; (k) the fairness of benefits from an immediate settlement under all of the foregoing considerations; and (l) the stage of the proceedings. *Id.* at ¶ 8. Substantial time and effort have been expended by the parties and their counsel in negotiating the settlement agreement. *Id.* at ¶ 8.

## III.    TERMS OF SETTLEMENT AGREEMENT

The terms of the settlement are set forth in the Settlement Agreement and briefly summarized here as follows:

### A.    Class Definition

The Settlement Agreement provides for a Settlement Class, defined as follows:

3

[T]he 143 California insureds who are named on the Class Member List, all of whom were insured under a non-ERISA group life insurance policy issued by Hartford Life and Accident Insurance Company to an employer sitused in California. All Class Members had a date of loss/disability after December 30, 2012 and either: (a) had a waiver of premium benefits claim denied by Hartford or (b) had waiver of premium benefits terminated by Hartford between December 30, 2012 and July 21, 2017. The denials or terminations were based on findings that the respective Class Member was not disabled or no longer met the definition of disability.

*Settlement Agreement*, § II.E.

## B.    Monetary Relief

### 1.    *Settlement Fund*

Hartford will pay $1,500,000.00, as a non-reversionary common fund, to settle this action and obtain the release of all released claims in favor of Hartford. *Id.* at § III.A. This Settlement Fund will be used to pay all settlement costs, which include: costs of Class Notice and settlement administration, including the Settlement Administrator's fees and expenses, the fees and expenses of any Class Notice expert, Class Counsel's Attorney's Fees and Expenses as awarded by the Court (including but not limited to the fees and expenses of any expert employed by Plaintiff), Plaintiff's Class Representative Award, costs and expenses associated with operating, maintaining or investing the Settlement Fund, taxes on the earning of the Settlement Fund, and any other costs of administering this Settlement. *Id.* at § II.CC. After all settlement costs have been paid, the remaining Settlement Fund will be paid to settlement class members. *Id.* at § III.A.

A special master has created a plan of allocation as to how to allocate the remaining Settlement Fund to settlement class members. *Settlement Agreement*, § II.A; Corby Decl., ¶ 23.  That plan is attached as Exhibit 5 to the Settlement Agreement. If the Court approves the proposed settlement including the plan of allocation, the special master shall distribute settlement funds as determined in the allocation plan and shall have sole authority and discretion regarding such

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

allocation decisions to settlement class members. *Settlement Agreement*, § III.A. The allocation decisions concern how much a class member should receive based on a number of claim-specific factors, including the potential that Hartford may have utilized an incorrect standard when adjudicating a premium waiver claim and the possibility that as a result a claimant was no longer eligible for coverage under the relevant policy. Those with stronger claims will receive a percentage of the face value of their policy. Other class members will receive an amount based upon a return-of-premium methodology.

However, in certain instances, the information about the policy was held exclusively by the employer and Hartford does not have access to the face value a particular claimant may have been eligible to receive as a life benefit had she or she submitted a valid claim. For this reason, part of the Special Master's allocation plan includes a secondary claims process where class members can make claims for an additional amount if they provide evidence they were eligible for a supplemental benefit at the time the claim was denied or terminated. Similarly, neither Hartford nor the employers have complete records regarding whether a claimant died subsequent to the denial or termination of that claimant's waiver-of-premium claim. This secondary claims process will also allow class members to receive additional payments if proof of death is provided. *Settlement Agreement*, § II.A, Exhibit 5 (Special Master Report); Corby Decl., ¶ 23.

### 2.    *Class Representative Award*

The settlement administrator will pay Plaintiff a $10,000 class representative award, payable from the Settlement Fund, subject to approval by the Court. *Settlement Agreement*, § III.C.

### C.    Injunctive Relief

Within thirty (30) days after the Final Settlement Date, consistent with California law Hartford shall, when determining a claim for premium waiver benefits for a California resident insured under a non-ERISA group life insurance policy issued to an employer sitused in California, interpret "Total Disability" to

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

mean that the insured, as a result of injury or sickness, is unable to engage with reasonable continuity in his/her own occupation for 24 months after the date of disability. Beyond the initial 24 month period, the insured is considered "Totally Disabled" if, due to the same injury or sickness, he/she is unable to engage with reasonable continuity in any occupation in which he/she could reasonably be expected to perform satisfactorily in light of his/her age, education, training, experience, station in life, and physical and mental capacity. In addition, an insured will be considered "Totally Disabled" if he/she has been diagnosed with a life expectancy of 12 months or less. *Id*. at § III.B.

Should California law change in the future as to the proper interpretation of "Total Disability" in considering a claim by a policyholder for premium waiver benefits, Hartford shall have the authority to change its interpretation of "Total Disability" without this Court's approval as long as the change is consistent with the law. *Id*. at § III.B.

### D. Release

#### 1. *Release and waiver*

In return for the consideration provided in the settlement agreement, upon final approval, Plaintiff and other Settlement Class Members will be deemed to have released, acquitted and forever discharged the releasees from the released claims, including but not limited to any and all past, present, and future causes of action, claims, damages (including but not limited to compensatory damages and punitive damages), or any other damages, awards, equitable, legal and administrative relief, interest, demands or rights that are based upon, related to, or connected with, directly or indirectly, in whole or in part claims that (a) arise out of the acts, omissions, facts, matters, transactions, and/or occurrences that were alleged in the Complaint; or (b) are connected with any alleged failure to comply with any law or the terms of any Policy relating to a waiver of premium. *Settlement Agreement*, § IX.A.1-2.

#### 2. *Order of dismissal*

6

The parties will seek and obtain from the Court a final order and judgment. The final order and judgment shall, among other things: (i) approve the settlement agreement as fair, reasonable and adequate, (ii) dismiss the action with prejudice and on the merits, and (iii) incorporate the terms of the release as written in the settlement agreement. *Id*. at § IX.B.

### E.    Attorney's fees and expenses

Hartford will pay to Class Counsel out of the settlement fund and as approved by the Court, Attorneys' Fees and Expenses, including reimbursement of expenses through the entry of the Final Order and Judgment, up to a cumulative total of $495,000. *Id*. at § X.A. The Motion and Memorandum for an Award of Attorneys' Fees, Expenses, and Incentive Award were filed concurrently with this memorandum.

## IV.    CLASS NOTICE

### A.    Class Member List

On September 27, 2018, Counsel for Hartford provided the settlement administrator, Tilghman, the list of the names and addresses of the 143 class members. Tilghman Decl., ¶ 5.

### B.    Notice Plan

#### 1.    Summary Settlement Notice

On October 17, 2018, which was within 30 days after notice of the entry of the Preliminary Approval Order, the settlement administrator sent via U.S. mail the Summary Settlement Notice (attached as Exhibit 2 to the Settlement Agreement), and Category "A" claim Form. Tilghman Decl., ¶ 7. The Summary Settlement Notice contains relevant information about the settlement and the deadlines to opt out and object, directs class members to the settlement website to review the Full Settlement Notice in English and Spanish, and provides a toll-free number that Settlement Class members could call for general information, in English and Spanish, about the settlement and to request a mailed copy of the Full Settlement

SHERNOFF BIDART ECHEVERRIA LLP

LAWYERS FOR INSURANCE POLICYHOLDERS

Notice. Prior to mailing the Summary Settlement Notice, the Settlement Administrator updated the last known addresses reflected in Hartford's records for class members by comparing them to the National Change of Address system to ensure individual notice was provided to all reasonably identifiable Class Members. *Id*. at ¶ 6. None of the Summary Settlement Notices were returned as undeliverable. *Id*. at ¶ 7.

### 2.    Settlement Website

The Summary Settlement Notice was made available to class members on October 17, 2018. Tilghman Decl., ¶ 9. The website, created by the settlement administrator, provides a description of the Settlement terms and contains the settlement agreement and exhibits, the operative complaint and a list of relevant deadlines, and other agreed-to materials and information. *Id*. A copy of the Summary Settlement Notice and Full Settlement Notice (attached as Exhibits 2 and 3 to the Settlement Agreement) were available to the public in English and Spanish through the settlement website. *Id*.

### 3.    Toll-free number

For those Class Members who cannot access the full settlement notice in such a manner, the settlement administrator established a toll-free number that class members could call to request a mailed copy of the Summary Settlement Notice or the full settlement notice in English or Spanish. Tilghman Decl., ¶ 8. Class members were also able to call this toll-free number for general information, in English and Spanish, about the settlement agreement, in the form of both recorded question and answer and live-answer options. *Id*.

Thus, all Settlement Class Members will have received the Summary Settlement Notice and were directed to further detailed information. Corby Decl., ¶¶ 13-17.

## III.    THE SETTLEMENT SHOULD BE APPROVED

In deciding whether to approve a proposed settlement of a class action under Federal Rule of Civil Procedure 23(e), the court must find that the proposed

8

settlement is "fair, reasonable, and adequate."

No single criterion is dispositive for whether a class settlement meets the requirements of Rule 23(e). The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See Staton v. Boeing Co.,* 327 F.3d 938, 959(9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The factors include:

(i) the strength of the plaintiff's case;

(ii) the risk, expense, and complexity of continued litigation;

(iii) the risk of maintaining class action status through trial;

(iv) the amount offered in settlement;

(v) the extent of discovery completed and the stage of proceedings;

(vi) the experience and views of counsel;

(vii) the presence of a governmental participant, and

(viii) the reaction of class members to the proposed settlement.

*Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1025 (9th Cir. 1998). Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 625 (internal citations omitted).

Where a settlement results from arm's-length negotiations after "relevant discovery" there is "a presumption that the agreement is fair." *Linney v. Cellular Ala. P'Ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997). So long as the discovery is sufficient to give the parties a clear view of the relative strengths and weaknesses of their respective cases, it need not be exhaustive. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (approving a

9

settlement where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). Notwithstanding any presumptions, the ultimate touchstone is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.

Indeed, "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Vanwagoner v. Siemens Indus., Inc.*, No. 2:13-cv-01303-KJM-EFB, 2014 WL 7273642, at *9 (E.D. Cal. Dec. 17, 2014) (same). Courts must "be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits." *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1040-41 (N.D. Cal. 2008); *see also Weeks v. Kellogg Co.*, No. CV 09-08102 (MMM) (RZx), 2013 WL 6531177, at *10 (C.D. Cal. Nov. 23, 2013) ("The Ninth Circuit has noted that, in considering whether to give final approval to a class settlement, 'there is a strong judicial policy that favors settlements particularly where complex class action litigation is concerned'") (quoting *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also In re Howrey LLP*, No. 14-cv-03062-JD, 2014 WL 3427304, at *5 (N.D. Cal. July 14, 2014) (same).

Approval or rejection of a settlement is committed to the sound discretion of the court. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). However, the Ninth Circuit has cautioned that a court's "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable

10

1  and adequate to all concerned." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT,

2  2005 WL 1594403, at \*2 (C.D. Cal. June 10, 2005) (citing *Officers for Justice*, 688

3  F.2d at 625).

4    **A.    The Settlement benefits from a presumption of reasonableness**

5        **because it is the product of arm's-length settlement negotiations.**

6        The process by which the Settlement was reached is evidence of its fairness.

7  The Settlement was extensively negotiated between the parties with the substantial

8  assistance of a well-respected private mediator with significant experience

9  mediating insurance-related issues, class actions, and other complex litigation.

10  Corby Decl., ¶¶ 8, 9. The Ninth Circuit "put[s] a good deal of stock in the product

11  of an arm's-length, non-collusive, negotiated resolution" in approving a class

12  action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

13  2009). Courts have also recognized that "[t]he assistance of an experienced

14  mediator in the settlement process confirms that the settlement is non-collusive."

15  *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at \*4 (N.D.

16  Cal. April 13, 2007); *see also Feyko v. AAD Partners LP*, No. LACV 11-05511

17  DDP (PJWx), 2014 WL 12572678, at \*7 (C.D. Cal. Mar. 7, 2014) ("Settlements

18  reached with the help of a mediator are likely non-collusive").

19        Here, Class counsel and counsel for Hartford conducted arm's-length

20  negotiations for a settlement of this action in two separate full-day sessions with

21  the Honorable Peter D. Lichtman (Ret.), taking into account: (a) the merits of the

22  complaint or the lack thereof; (b) the strength of Plaintiff's case compared to the

23  amount of Hartford's settlement offer; (c) the time, expense and effort necessary to

24  litigate the action to conclusion; (d) possibilities of success weighed against the

25  possibilities of loss; (e) the range of potential judgment values, if any should be

26  awarded; (f) the complexity of the issues in the action; (g) the risks inherent in

27  protracted litigation; (h) the magnitude of benefits to be gained from immediate

28  settlement in light of both the maximum potential of a favorable outcome with the

attendant expense and likelihood of an unfavorable outcome; (i) the possibility of

SHERNOFF BIDART ECHEVERRIA LLP

LAWYERS FOR INSURANCE POLICYHOLDERS

11

no recovery to any potential class members whatsoever; (j) the merits of Hartford's motion to dismiss and motion to strike class action allegations; (k) the fairness of benefits from an immediate settlement under all of the foregoing considerations; and (l) the stage of the proceedings. Corby Decl., ¶ 8. Substantial time and effort have been expended by the parties and their counsel in negotiating the settlement agreement. *Id.* at ¶ 8.

Therefore, because the Settlement was the result of arm's-length, non-collusive negotiations, it is presumptively reasonable and fair.

**B.    The Settlement is substantively fair and satisfies the Ninth Circuit settlement approval standards.**

**1.    *The strength of Plaintiff's case and the risk, expense, complexity and likely duration of continued litigation.***

In assessing whether the proposed Settlement is fair, reasonable and adequate, "the Court must balance against the continuing risk of litigation (including the strengths and weaknesses of the plaintiff's case), the benefits afforded to members of the Class, and the immediacy and certainty of substantial recovery." *Johansson-Dohrmann v. CBR Sys.*, No. 12-cv-1115-MMA (BGS), 2013 WL 3864341, at *4 (S.D. Cal. July 24, 2013) (citing *Mego*, 213 F.3d at 458). The Court should also consider the complexity and likely duration of continued litigation. *Officers for Justice*, 688 F.2d at 625.

Here, Hartford filed a motion to dismiss and a motion to strike the class allegations, neither of which were resolved at the time the settlement was reached. Even though Plaintiff and Class Counsel are confident that they would prevail on these motions, these motions show the continuing risk of litigation, not only by exposing some of the potential weaknesses of Plaintiff's case, but signaling just how vigorously Hartford will litigate the complex issues in this case at every opportunity. Corby Decl. ¶ 20.a.

More specifically, Hartford asserts in its motion to strike that claims arising from wrongfully denied insurance claims are not appropriate for class action

1    treatment, especially in the context of disability claims. Hartford argues that such a

2    scenario requires claim-by-claim examination of the facts of each individual case,

3    which defeats Rule 23(a) typicality and commonality requirements, as well as the

4    predominance and superiority requirements under Rule 23(b)(2) and (3).

5        Hartford asserts in its motion to strike that claims arising from wrongfully

6    denied insurance claims are not appropriate for class action treatment, especially in

7    the context of disability claims. Corby Decl. ¶ 20.b. Hartford argues that such a

8    scenario requires claim-by-claim examination of the facts of each individual case,

9    which defeats Rule 23(a) typicality and commonality requirements, as well as the

10    predominance and superiority requirements under Rule 23(b)(2) and (3). *Id*. But

11    Hartford's motion misses the point: Plaintiff contents that the conduct carried out

12    by Hartford was not individualized, but was carried out through a uniform

13    standard. *Id*. Any supposed individualized determinations are secondary to

14    determining whether Hartford uniformly applied an unlawful definition of "total

15    disability" to *all* class members that resulted in their claims being denied or

16    terminated. *Id*. Moreover, any supposed need to make these individual

17    determinations is obviated by the settlement agreement, as the parties have jointly

18    agreed to a special master who will create a plan to allocate the settlement funds to

19    class members on an individualized basis. *Id*.

20        With respect to Hartford's motion to dismiss, Hartford also raised issues

21    surrounding the UCL claims. Specifically, Hartford contended that the UCL claims

22    should be dismissed because Plaintiff (1) has an adequate remedy at law through

23    his breach of contract claim, (2) has no standing to pursue injunctive relief because

24    his policy is no longer in force, and (3) seeks damages, which the UCL does not

25    allow. Corby Decl., ¶ 20.c. Like the issues raised by the motion to strike, these will

26    be addressed by the settlement reached by the parties. For example, even though

27    Hartford contends that Plaintiff had no Article III standing to make injunctive

28    relief claims as to Hartford's *future* disability decisions (because his policy was

    terminated), the settlement agreement here provides for injunctive relief. The

13

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1    settlement also obviates the issues regarding the strength of Plaintiff's UCL claims

2    and sought relief, as it provides for a settlement fund. Corby Decl., ¶ 20.d.

3         Moreover, the motion to dismiss also creates the risk that Plaintiff's

4    individual claims will be dismissed (for reasons other than class issues), which

5    would create the risk of the class being without a representative. But the settlement

6    avoids that possibility. Corby Decl., ¶ 20.e.

7         In addition to the issues raised by Hartford's motions, one of the other

8    significant challenges to the case is Hartford's contention that members would

9    need to show continuing disability to be eligible for waiver of premium benefits.

10   Much like the arguments raised in Hartford's motions, this would create class

11   certification issues because of the individualized nature of proving continuing

     disability for each class member. Corby Decl., ¶ 20.f.

12        Although Plaintiff and proposed Class Counsel are confident in the strength

13   of their claims and in their ability to prevail ultimately at trial, they recognize that

14   litigation is inherently risky. If the litigation were to proceed, Hartford would raise

15   multiple defenses, including the arguments raised in its motions to dismiss and to

16   strike, making this settlement all the more reasonable. Corby Decl., ¶ 21.

17        Similarly, the risk of maintaining class action status throughout trial supports

18   approval of the Settlement. Plaintiff is confident that he would prevail on a motion

19   for class certification. However, Plaintiff acknowledges that an order certifying a

20   class may always be revisited. Moreover, developments in the law could be used

21   by Defendants to oppose class certification. *Id*. at ¶ 22.

22        **2.    *The amount offered supports approval of the settlement***

23        The settlement here deserves final approval because providing

24   individualized payments to class members and requiring Hartford to confirm it has

25   changed its disability standard is the best means of providing a benefit to the class.

26        Indeed, after attorney fees and expenses are deducted, roughly $930,000 will

27   be allocated to the 143 class members. According to the determinations made by

28   the special master, class members will receive payments depending on a number of

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

claim-specific factors, including the potential of policy lapse and amount of death benefits, and will therefore receive an amount resembling a refund of premiums or partial payment of the face value of member's policy. Corby Decl. ¶ 23. More specifically, in order to allocate the funds so as to provide fair, adequate and reasonable compensation to each member, the special master divided the payments into categories. Corby Decl. ¶ 24. In Category A, whose members had stronger claims, the members were awarded a pro-rata percentage of the face value likely to have been lost due to Hartford's alleged use of an unlawful standard of "total disability." *Id*. The special master determined this value to be 12% of the face value of each member's policy, which correlates to the figures provided by an actuary, hired to determine the average value of a life policy on the secondary market. *Id*. In Category B, whose members had weaker claims (because other terms and conditions applied to the denied or terminated benefit, or members were likely still employed), the members will receive $500 each, based on a return-of-premium methodology. *Id*.

In addition to the direct monetary benefit, the settlement agreement includes injunctive relief requiring that within thirty days after the Final Settlement Date, Hartford shall confirm that, when determining a claim for premium waiver benefits for a California resident insured under a non-ERISA group life insurance policy issued to an employer sitused in California, it interprets "Total Disability" to mean that the insured, as a result of injury or sickness, is unable to engage with reasonable continuity in his/her own occupation for 24 months after the date of disability. Beyond the initial 24 month period, the insured is considered "Totally Disabled" if, due to the same injury or sickness, he/she is unable to engage with reasonable continuity in any occupation in which he/she could reasonably be expected to perform satisfactorily in light of his/her age, education, training, experience, station in life, and physical and mental capacity.  In addition, an insured will be considered "Totally Disabled" if he/she has been diagnosed with a life expectancy of 12 months or less.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

3.    *The extent of discovery complete and the stage of the proceeding supports approval of the settlement.*

The amount of discovery and stage of proceedings favor approval of a settlement where they demonstrate Counsel's familiarity with the case and Plaintiff having enough information to make informed decisions. *Omnivision*, 559 F. Supp. 2d at 1042.

Here, although no formal discovery was received in response to Plaintiff's discovery requests, the Parties informally exchanged substantial information through their extensive settlement discussions that provided them with "sufficient information to make an informed decision about settlement" which is a factor that weighs in favor of approval. Corby Decl. ¶ 11; *Mego*, 213 F.3d at 459 (affirming approval of settlement because parties had adequate information to evaluate settlement based on class counsel's significant investigation and work with damages and accounting experts, despite the fact that "extensive formal discovery had not been completed"); s*ee also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (approving a settlement where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). More specifically, Class Counsel sent a list of questions to counsel for Hartford regarding: how Hartford processed claims, how many people may have been affected by Hartford's definition of "total disability" and how they might be affected, how long had those claims practices been in place, and if there had been any changes to those practices. Counsel for Hartford answered all of these questions in good faith, both through written responses and telephone conversations. *Id.*

Therefore, this factor weighs in favor of final approval.

4.    *The experience and views of counsel support approval of the settlement.*

In determining whether the Settlement should be approved, the Court should consider counsel's view as to whether the Settlement is fair, reasonable, and

adequate. As the Ninth Circuit observed in *Rodriguez*, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. 563 F.3d at 965; *see also Omnivision*, 559 F. Supp. 2d at 1043 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness"). Courts recognize that, in determining whether a proposed settlement is fair, "[g]reat weight" should be accorded to the views of experienced class counsel "who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal quotations and citation omitted); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *2-3 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement).

Here, Class Counsel have regularly engaged in major complex litigation and have extensive experience in consumer class action lawsuits that are similar in size, scope, and complexity to the present case, and also have an expertise in insurance-related issues. Corby Decl. ¶ 18; Firm resumes of Shernoff Bidart Echeverria LLP (attached as Exhibit D to the Johnson Decl.), and Consumer Watchdog (attached as Exhibit E to the Powell Decl.). Based on Counsel's overall experience generally and their work on this case specifically, Class Counsel believes the Settlement is fair, reasonable, and adequate. *Id.* at ¶ 19. This view is informed by the extensive settlement negotiations of the parties, the legal research conducted in connection with filing the class action complaint and motions to strike and dismiss, the review of informal discovery, as well as Class Counsel's background and experience in evaluating the strengths and weaknesses of insurance-related cases and class actions. *Id.* Accordingly, this factor weighs in favor of approving the proposed Settlement.

### 5. *The Presence and views of a government participant supports approval of the settlement.*

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

Although there was no governmental participation in this case, Defendants were still obligated to notify the United States Attorney General and all other state attorneys general as a condition of obtaining Court approval of the Settlement. 28 U.S.C. § 1715. "Although [the Class Action Fairness Act] does not create an affirmative duty for either the state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co,* 2010 WL 1687832, at \*14 (N.D. Cal. Apr. 22, 2010). If any state or federal official raises any objection to the Settlement after receiving the CAFA notice, the Parties will notify the court.

**6.    *The reaction of Class members to the proposed settlement supports approval of the settlement.***

As of the date of this motion, there were zero objections and zero requests for exclusion from class members, which further shows that the Settlement is fair, adequate, and reasonable, and supports final approval. Tighlman Decl., ¶ 10; *see, e.g., Churchill Vill. LLC v. Gen. Elec.,* 361 F.3d 566, 577 (9th Cir. 2014) (affirming approval of settlement where 45 of 90,000 class members objected); *Perkins v. Linked In Corp.,* 2016 WL 613255, at \*3 (N.D. Cal. 2016) (affirming approval of settlement with 86 objections); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (explaining that low level of objections is a "rare phenomenon"); *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152–53 (2000) (finding nine objections, and 80 opt-outs, from a class of 5,454, showed a positive response from class members supporting settlement approval.)

**7.    *The absence of collusion precludes additional scrutiny and favors final approval.***

In addition to the factors described above, courts often require a higher standard of fairness when parties reach a settlement prior to certifying the class.

18

*See Martin v. Ameripride Services, Inc.*, 2011 WL 2313604, at *5 (S.D. Cal. June 9, 2011). They do so "to ensure class counsel and defendant have not colluded in settling the case." *Id.* (citing *Hanlon*, 150 F.3d at 1026). The factors most indicative of collusion between the parties are "(1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds;... and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal citations and quotations omitted). Not one of these "warning signs" is present in this case.

First, Class Counsel seeks a percentage of the Settlement Fund that falls within the Ninth Circuit's typical fee range for cases where the total recovery is relatively small ($10 million or less, as compared to settlement funds in the hundreds of millions). *See Martin*, 2011 WL 2313604, at *8. Further, the proposed Fee Award was negotiated only after Class Counsel obtained full relief for the Class. Corby Decl. ¶ 25. Second, there is no "clear sailing" fee provision in the Agreement. Rather, Plaintiff's attorneys' fees and costs are based upon the value of and come from the Settlement Fund. *Id.* Finally, no terms in the Settlement provide that any attorneys' fees not awarded revert to back to Defendants. *Id.*

In the end, there was no collusion present in this case. To reach this determination, the Court can look to the assurances of counsel and the presence of a neutral mediator, both of which "weigh[] in favor of a finding of non-collusiveness." *In re Bluetooth*, 654 F.3d at 948. Further, the resolution could not have been reached without the assistance of a private mediator. Given the circumstances, coupled with the substantive terms of the Settlement and exceptional relief obtained for the Settlement Class, there should be no question that collusion is not a concern.

19

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

Accordingly, the final factor also supports a finding that the Settlement is fair and reasonable, and the Court can properly enter an Order granting final approval of the settlement.

### C.   CAFA Compliance

The CAFA requires that "each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement ..." 28 U.S.C. § 1715(b). This notice must contain notice of any scheduled judicial hearing, the proposed or final notification to class members, the proposed settlement, and, if feasible, the names of the class members residing in each state or a reasonable estimate of the number of class members in each state. *Id*.

Here, on the day of the filing of this Motion, Defendants will be providing the required CAFA notice to the Attorney General of the United States, the Attorneys General of all 50 states and the District of Columbia, and the Attorneys General for the U.S. Territories in American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, the Virgin Islands, Micronesia, Palau, and the Marshall Islands. The Notice will contain all of the information referenced in CAFA and will advise the recipients to contact them if they have any questions. In short, CAFA's notice requirements will be satisfied. The Parties can provide the Court with a copy of this notice before the Final Approval hearing.

### IV.   THE NOTICE PLAN COMPLIED WITH THIS COURT'S PRELIMINARY APPROVAL ORDER AND APPLICABLE LEGAL STANDARDS

Before final approval of a class action can issue, notice of the settlement must be provided to the class. Fed. R. Civ. P. 23(e)(1). Rule 23 requires that the class receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Actual notice, however, is not required. *Silber v.*

20

*Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.*, 361 F.3d at 575 (internal citations omitted).

In the Preliminary Approval Order, the Court previously approved the notice plan specified in the Settlement Agreement and found that it "meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto." Corby Decl., Exhibit B (Preliminary Approval Order), 4:3-8. The Parties and Settlement Administrator fully implemented the directives of the Preliminary Approval Order, thereby complying with the notice plan. Corby Decl., ¶ 12; Tilghman Decl., ¶¶ 5-10. The notice sent informed each Class member of the terms of the Settlement, the description of the litigation, the time and place for the final fairness hearing, contact information for questions and concerns, and information regarding how to opt out of or object to the Settlement. Decl. Corby, ¶ 13. In short, the notice to the Class satisfies Rule 23, Due Process and the standard of the "best notice practicable under the circumstances."

## V.    THE COURT SHOULD ALSO FINALLY APPROVE CERTIFICATION OF THE SETTLEMENT CLASS

For the reasons set forth in greater detail in Plaintiffs' previously filed motion for preliminary approval, Plaintiffs respectfully submit that the Settlement Class satisfies the requirements of Rule 23 for final certification for settlement purposes only. Under the first step of the settlement approval analysis, this Court was obliged to make an initial determination that the Settlement Class meets the requirements of Rule 23. This requires that all four Rule 23(a) prerequisites and that at least one of the three Rule 23(b) requirements be met.

Plaintiffs need only make a "prima facie showing" of the requirements under Rule 23. *See* Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro.

21

SHERNOFF BIDART
ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

1    Before Trial § 10:573 (Rutter Group 2006). In determining the propriety of class
2    certification, a court may not delve into the underlying merits of the claims. The
3    fundamental question "is not whether . . . plaintiff [has] stated a cause of action or
4    will prevail on the merits, but rather whether the requirements of Rule 23 are met."
5    *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

6    　　　Here, when this Court issued its September 17, 2018 order, it found that the
7    Settlement Class meets the requirements for class certification for settlement
8    purposes only. Corby Decl., Exhibit B (Preliminary Approval Order), 2:11-3:18.
9    No subsequent events have cast doubt on this determination, so Plaintiffs do not
10   repeat the discussion regarding the propriety of certification for settlement
11   purposes only here. For the reasons set forth in greater detail in Plaintiffs'
12   preliminary approval motion, and for the reasons set forth in the Court's September
13   17, 2018 order, final certification for settlement purposes is appropriate, and this
14   Court should confirm its conditional grant of certification of the Settlement Class
     for settlement purposes only.

15   **VI.    CONCLUSION**

16   　　　Given the favorable terms of the proposed Settlement and the rigorous
17   manner in which the terms were negotiated, the proposed Settlement is a fair,
18   reasonable, and adequate compromise of the issues in dispute and merits final
19   approval. Therefore, Plaintiff respectfully requests that the Court give final
20   approval to the Parties' Settlement.

21   Dated:  December 14, 2018        SHERNOFF BIDART ECHEVERRIA LLP

22
23                                    By:　/s/ Travis M. Corby_____
                                           William Shernoff
24                                         Travis M. Corby

25                                    CONSUMER WATCHDOG

26
27                                    By:　/s/ Jerry Flanagan_____
                                           Jerry Flanagan
28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

Attorneys for Plaintiff Keith Laster and on behalf of all others similarly situated

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 600 S. Indian Hill Boulevard, Claremont, California 91711.

On December 14, 2018, I served the foregoing document described as: PLAINTIFFS' NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT on all interested parties in this action by placing [ ] the original [X] a true copy thereof enclosed in sealed envelopes addressed as follows:

(See Attached Service List)

[ ] BY MAIL  I caused such envelope to be deposited in the mail at Claremont, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date deposit for mailing in affidavit.

[ ] BY PERSONAL SERVICE  I caused to be delivered by hand to the above-listed addressees or to the addressees on the list attached hereto. A proof of service executed by the delivery person will be mailed under separate cover.

[ ] BY OVERNIGHT MAIL/COURIER  To expedite the delivery of the above-named document, said document was sent via overnight courier for next day delivery to the above-listed party.

[X]  BY CM/ECF ELECTRONIC DELIVERY:  In accordance with the registered case participants and in accordance with the procedures set forth at the Court's website www.ecf.cacd.uscourts.gov.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of California that the above is true and correct.

Executed on December 14, 2018 at Claremont, California.

_____/s/ Susan F. Lacey_____
SUSAN F. LACEY

24

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

## SERVICE LIST

Linda B. Oliver, Esq.
MAYNARD, COOPER & GALE, LLP
600 Montgomery Street, Suite 2600
San Francisco, California  94111
Phone:  415-646-4700
Fax: 205-254-1999
loliver@maynardcooper.com

Lee E. Bains, Jr., Esq.                                    (Admitted *pro hac vice*)
William B. Wahlheim, Jr., Esq.                            (Admitted *pro hac vice*)
Thomas J. Butler, Esq.                                    (Admitted *pro hac vice*)
MAYNARD COOPER & GALE, LLP
1901 Sixth Avenue North, Suite 2400
Birmingham, Alabama  35203
Phone:  205-254-1000
Fax:  205-254-1999
lbains@maynardcooper.com
wwahlheim@maynardcooper.com
tbutler@maynardcooper.com

25

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT