JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH LASTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, a corporation; and Does 1 through 100,<br><br>Defendants. | Case No. 2:17-cv-00851-AB (JEMx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND EXPENSES** |

Pending before the Court are Plaintiff's Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees and Expenses. Dkt. Nos. 63, 64. Defendants Hartford Life and Accident Insurance Company et al. ("Hartford") do not oppose the motions. The Court heard oral argument on January 11, 2019. An opportunity was given for class members to exclude themselves from the settlement class. No objections have been made. For the following reasons, the Court **GRANTS** Lead Plaintiff's motion for final approval and **GRANTS** Lead Plaintiff's motion for attorneys' fees and expenses.

I.  **BACKGROUND**

Plaintiff filed this Action on December 20, 2016, in the Superior Court for the State of California for the County of Los Angeles. Plaintiff, individually and on

behalf of all others similarly situated, alleged that Defendant improperly denied policyholders' valid waiver of life insurance premium claims based on Defendant using a definition of "Total Disability" in the life insurance contracts that was contrary to California law. Plaintiff asserted the following claims in the complaint: (1) violation of California Business & Professions Code §§17200, et seq. (unlawful); (2) violation of California Business & Professions Code §17200, et seq. (unfair); (3) breach of contract; (4) breach of duty of good faith and fair dealing; and (5) declaratory relief. (Dkt. No. 1, Ex. A). On February 2, 2017, Defendant removed this Action to this Court. (Dkt. No. 1).

On April 10, 2017, Defendant filed a motion to dismiss certain claims (Dkt. No. 19), a motion to strike class action allegations (Dkt. No. 20), and a motion to stay pending resolution of the motion to dismiss and motion to strike class action allegations (Dkt. No. 21). Prior to the Court ruling on any of these pending motions, the Parties entered into the Settlement Agreement.

Class Counsel and counsel for Hartford conducted negotiations for a settlement of this Action in two separate full-day sessions with the Honorable Peter D. Lichtman (Ret.), taking into account: (a) the merits of the Complaint or the lack thereof; (b) the strength of Plaintiff's case compared to the amount of Defendant's settlement offer; (c) the time, expense and effort necessary to litigate the Action to conclusion; (d) possibilities of success weighed against the possibilities of loss; (e) the range of potential judgment values, if any should be awarded; (f) the complexity of the issues in the Action; (g) the risks inherent in protracted litigation; (h) the magnitude of benefits to be gained from immediate settlement in light of both the maximum potential of a favorable outcome with the attendant expense and likelihood of an unfavorable outcome; (i) the possibility of no recovery to any potential Class Members whatsoever; (j) the merits of Defendant's motion to dismiss and motion to strike class action allegations; (k) the fairness of benefits from an immediate settlement under all of the foregoing considerations; and (l) the stage of the

proceedings.

On December 12, 2018, the Parties filed their Stipulation of Settlement with this Court. This Court preliminarily approved that Settlement on September 17, 2018. Dkt. No. 62. The Settlement provides injunctive relief in the form of Hartford, within thirty (30) days after the Final Settlement Date, interpreting "Total Disability" to be a disability preventing the insured from carrying out the substantial and material duties with reasonable continuity in his customary occupation or in any other occupation in which he might reasonably be expected to engage in view of his station and physical and mental capacity. The Settlement also provides a non-reversionary common fund of $1,500,000.00 to settle this Action and obtain the Release of all Released Claims in favor of Hartford.

On December 14, 2018, Class Counsel filed their application for Attorneys' Fees and Expenses, requesting $495,000, representing 33% of the Settlement Fund.

The Settlement Administrator, Tilghman & Co, mailed Class Notice to Class Members on October 17, 2018. Tilghman & Co is not aware of any notices that were returned as undeliverable. The Settlement Administrator has certified that 100% of the Class has received the Class Notice.

**LEGAL STANDARD**

    **a. Approval of Class Action Settlement**

Final approval of a class action settlement involves two steps. "First, the district court must assess whether a class exists; "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Staton v. Boeing,* 327 F.3d 938, 952 (9th Cir. 2003) (citation omitted) (quoting *Amchem Prods. v. Windsor,* 521 U.S. 591, 117 S. Ct. 2231 (1997)). Next, the district court must determine whether the settlement agreement is "fair, reasonable, and adequate." *Id.* at 959.

    **b. Approval of Attorneys' Fees and Expenses**

Using a similar inquiry, the Court must also determine whether attorneys' fees, litigation costs, and settlement administration costs are fair and reasonable in relation to the settlement agreement. *Knisley v. Network Assocs.,* 312 F.3d 1123, 1126 (9th Cir. 2002). The Court must ensure that the award is reasonable even if both parties agreed to a specified amount in the settlement agreement. *In re Bluetooth Prods. Liability Litig.*, 654 F.3d at 941 (9th Cir. 2011); *see also Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1328-29 (9th Cir. 1999) ("[T]he district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper.").

## II. DISCUSSION

The Court will first discuss whether Plaintiffs' settlement is subject to final approval, before turning to whether Plaintiffs' attorneys fees and expenses are fair and reasonable.

### a. Class Certification for Final Approval

A class action may proceed only if it meets the four Rule 23(a) prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In preliminarily approving the Settlement agreement, the Court found each of these requirements was satisfied. For purposes of final approval, the Court addresses each Rule 23 prerequisite below.

#### i. Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. There is no specific number requirement to establish that joinder is impracticable, however, numerosity is presumed where the plaintiff class contains forty or more members. *In re Cooper Cos.Sec.Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009). Here, the Class consists of 143 Class Members. The numerosity requirement

clearly is met. Numerosity is satisfied here.

### ii. Commonality

Under Rule 23(a)(2), plaintiffs must demonstrate "there are common questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Slight differences among the class members will not prevent certification. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975). Claims of class members are sufficiently common if they share questions of fact and law. *Shelby v. Two Jinns, Inc.*, No. 15-013794, 2017 WL 6347090, at *3 (C.D. Cal. 2017). What matters most, however, "is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S. Ct. 2541, 2551 (2011) (citation omitted). The claims of the Class Members shared a common legal question: whether Hartford used a definition of "Total Disability" that did not comply with California law. Here, commonality is met because the Settlement gives the Class a "common answer": the Settlement provides injunctive relief by requiring Hartford to uniformly interpret "Total Disability" as a disability preventing the insured from carrying out the substantial and material duties with reasonable continuity in their customary occupation or in any other occupation in which they might reasonably be expected to engage in view of their station and physical and mental capacity. The Settlement Fund, with its carefully crafted Plan of Allocation, also provides a common answer. Commonality is met for settlement purposes only.

The Settlement Class must meet Rule 23(b)(3)'s predominance requirement. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Shelby*, 2017 WL 6347090, at *4. Plaintiff identifies a number of common questions in his Motion for Final Approval of Class Action Settlement, and as noted above, the Settlement provides a common resolution with both a Settlement Fund and

injunctive relief. The proposed Settlement Class, in light of the Settlement and Plan of Allocation, meets the predominance requirement for settlement purposes only.

### iii. Typicality

Typicality requires that the claims of the named plaintiff be typical of those of the Class Members. Fed. R. Civ. P. 23(a)(3). "Representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). Here, the named Plaintiff, as with the Class, claims to have been injured by Hartford's using a definition of "total disability" that does not comply with California law. Typicality is met for settlement purposes only.

### iv. Adequacy

Finally, to satisfy Rule 23, the named plaintiff must demonstrate that it will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153 (N.D. Cal. 1991) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982). As above, Plaintiff's claims align with the putative class. Additionally, it does not appear that Plaintiff has any conflicts of interest with other class members because its claims are typical of claims raised by the proposed Settlement Class. Thus, the adequacy of representation is met for settlement purposes.

### b. Fairness, Reasonableness, and Adequacy of the Proposed Settlement

Next, the Court must make the determination that the proposed settlement is "fair, reasonable, and adequate." In making this determination, the Court must consider the following factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6)

the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)

Because the risk of a breach of fiduciary duty owed to the class during settlement is greater prior to formal class certification, courts must conduct additional scrutiny before approving a settlement as fair. *In re Bluetooth Prods. Liability Litig.*, 654 F.3d at 941 (9th Cir. 2011). The Court considers whether the proposed settlement is fair under these criteria.

### i. The Strength of Lead Plaintiff's Case, the Risks Associated with Further Litigation

"Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case." *G.F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 7571789, at *8 (N.D. Cal. Nov. 25, 2015).

Plaintiff's Motion for Final Approval identifies the risks they face with continued litigation of their claims. Prior to settlement, Hartford filed a motion to dismiss (Dkt. No. 19), making numerous arguments for dismissal of all of Plaintiff's claims based on California Business & Professions Code §17200 violations and Plaintiff's declaratory judgment claim. Thus, the purported class faced a serious risk of no recovery for its claims. Hartford also raised potentially legitimate standing arguments as to some of the class claims. Additionally, prior to settlement, Hartford filed a Motion to Strike Class Action Allegations (Dkt. No. 20), arguing that cases such as this, involving claims arising from the denial of insurance claims, are not appropriate for class action treatment because such a denial is so highly individualized. Similarly, Hartford argued that members need to show continuing disability to be eligible for waiver of premium benefits. These arguments could present further class certification issues because of the individualized nature of showing continued disability for each member.

Plaintiff appears to have properly accounted for his likelihood of success in

agreeing to the Settlement. This factor weighs in favor of approval.

Further, given Hartford's pending motion to dismiss and motion to strike class action allegations, Plaintiff faced significant liability and class certification hurdles. The Parties faced lengthy, complex, and expensive class certification-related discovery, followed by lengthy merits discovery, including expensive expert testimony. In light of these uncertainties, the Court finds that this factor weighs in favor of Settlement.

Finally, had settlement not been reached, Hartford would have vigorously opposed class certification, especially given its early filing of its Motion to Strike Class Action Allegations (Dkt. No. 20). The avoidance of risk of obtaining and maintaining class certification through trial favors the Settlement.

### ii. Settlement Amount

The settlement amount is "the most important variable in assessing a class settlement." *Volkswagen*, 2017 WL 316165, at *9. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000) *as amended* (June 19, 2000). "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 2d. 615, 624 (9th Cir. 1982) (citations omitted) (internal quotations omitted).

The Settlement, as a whole, affords valuable relief to Settlement Class Members. It includes a $1.5 million non-reversionary Settlement Fund. "A proposed settlement may be fair, adequate, and reasonable even though greater recovery might be available to class members at trial." *Brown v. China Integrated Energy Inc.*, No. 11-02559, 2015 WL 12712081, at *6 (C.D. Cal. Aug. 19, 2015) (citing *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement

8.

inadequate or unfair")). Given the small class size, and the fact that the Settlement Fund is non-reversionary and thus Settlement Class Members will receive all of the Remaining Settlement Fund, the Court finds this amount to be fair, adequate, and reasonable.

In addition, the Settlement provides substantial injunctive relief, in requiring Hartford to confirm that, within thirty (30) days after the Final Settlement Date, when determining a claim for premium waiver benefits for a California resident insured under a non-ERISA group life insurance policy issued to an employer situated in California, it interprets "Total Disability" to mean that the insured, as a result of injury or sickness, is unable to engage with reasonable continuity in his/her own occupation for 24 months after the date of disability. Beyond the initial 24 month period, the insured is considered "Totally Disabled" if, due to the same injury or sickness, he/she is unable to engage with reasonable continuity in any occupation in which he/she could reasonably be expected to perform satisfactorily in light of his/her age, education, training, experience, station in life, and physical and mental capacity. In addition, an insured will be considered "Totally Disabled" if he/she has been diagnosed with a life expectancy of 12 months or less. Should California law change in the future as to the proper interpretation of "Total Disability" in considering a claim by a policyholder for premium waiver benefits, Hartford shall have the authority to change its interpretation of "Total Disability" to conform with California law without this Court's approval.

### iii. Extent of Discovery Completed

This factor requires the Court to gauge whether Plaintiffs have sufficient information to make an informed decision about the merits of their case. See *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, L*LC, No. C-02-4546

9.

VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citation omitted).

Class Counsel conducted significant investigation and research into the Class claims. Hartford provided Class Counsel and the Special Master with definitive Class Member information such as the number of Class Members, amounts of basic and supplemental life insurance coverage for each Class Member where such information was readily available to Hartford and certain available information regarding the underlying premium waiver claim decisions. The Court concludes that the Parties here had sufficient information to make an informed decision about the Settlement.

### iv. Experience of Counsel

Class Counsel's recommendations are presumed reasonable because "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (citation omitted). Class Counsel express strong support for this Settlement. Class Counsel and defense counsel are highly-experienced class action practitioners. To avoid further expensive and lengthy litigation, they engaged in mediation with the assistance of an experienced mediator and former Judge. Counsel have weighed the strengths and weaknesses of their respective positions, and endorse this Settlement.

### v. Government Participant

There is no government participant in this case that would disfavor final approval.

### vi. Class Reaction to Settlement

"A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014). All Class Members were given a full and fair opportunity to object to the Settlement and to

participate in the Fitness Hearing. As of January 11, 2019, no class member has objected to the Settlement.

### vii. The Settlement Agreement is Free From Collusion

The Settlement Agreement is free from collusion. The Ninth Circuit puts "a good deal of stock in the product of arms-length, non-collusive, negotiating resolution . . .". *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 965 (9th Cir. 2009). Here, the Settlement was the result of significant arms-length negotiation with a neutral mediator. Negotiations took place over the period of several months and the private mediator attested to the zealous advocacy of counsel on behalf of their clients.

### c. Plan of Allocation

Plaintiff also requests this Court confirm its request of allocation as adequate. Under Rule 23, a plan of allocation "is governed by the same standards of review applicable of the settlement as a whole; the plan must be fair, reasonable, and adequate." *Vinh Nguyen v. Radient Pharma. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. 2014). To be approved, the plan needs to have a reasonable basis. *Id.* "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." Id. (citation omitted). An allocation plan should simply "provide an equitable basis for distributing the settlement fund." *In re Wireless Facilities,* 2008 WL 11338455, at *6.

The Plan of Allocation is reasonable and has a rational basis. The Court-appointed Special Master in this case created the plan of allocation and deems it as fair and reasonable. The Court finds that the Special Master's plan for allocation is fair, adequate, and reasonable. Therefore, the Court approves Plaintiff's Plan of Allocation.

### d. Attorneys' Fees and Expenses

Plaintiffs' move for (1) an award of attorneys' fees equal to $495,000, or 33% of the $1.5 million total Settlement Fund; and (2) litigation expenses of $22,519.87

The Court will address each request in turn.

### i. Attorneys' Fees

As an initial matter, the Court addresses whether Class Counsel should be awarded attorneys' fees as a percentage of the gross settlement sum. Class Counsel seeks a percentage method fee award based upon the $1.5 million gross settlement sum. An award of attorneys' fees from a common fund is appropriate only where the Court can: "(1) sufficiently identify the class of beneficiaries; (2) accurately trace the benefits; and (3) shift the fee to those benefitting with some exactitude." *Staton*, 327 F.3d at 972 (citations omitted). A fee award from the sum is appropriate once each class member has "an undisputed and mathematically ascertainable claim" to a sum recovered on his or her behalf, as opposed to "a general social grievance." *Van Gemert*, 444 U.S. at 479. Thus, a percentage method fee award based upon the $1.5 million gross settlement sum is appropriate so long as the *Staton* criteria are met.

The parties have identified and notified class members of settlement. This satisfies the first criterion. Furthermore, the benefits of the Settlement can be accurately traced and the method for apportioning each member's cash payment or credit are fair; a Court-appointed Special Master created the plan of allocation for the Settlement. This satisfies the *Staton* criteria, and the Court therefore approves Class counsel's request to base the fee award upon the $1.5 million gross Settlement sum.

Next, the Court turns to whether the requested fees award is appropriate. A district court may be authorized by law or the parties' agreement to award reasonable attorneys' fees and nontaxable costs in a certified class action. Fed. R. Civ. P. 23(h). The Court "must carefully assess" the reasonableness of the fee award. *See Staton*, 327 F.3d at 963. Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 942, 944-45 (9th Cir. 2011) (finding that when a settlement establishes

a common fund for the benefit of a class, courts may use either the lodestar method or the percentage-of-recovery method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing the primary method.).  The Court will analyze Class Counsel's fee request under both theories.

### 1. Percentage of the Common Fund

Under the percentage-of-recovery method, courts typically calculate 25% of the fund as a benchmark for a reasonable fee award.  *See In re Bluetooth*, 654 F. 3d at 942.  However, the percentage can range.  *See Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at *8 (S.D. Cal. 2010) (finding an award of 33.3% of the common fund to be reasonable because class counsel took the case on a contingent basis and litigated for two years, awards usually range from 20% to 50% and no class member objected to the award).  Other than relying on this benchmark percentage, courts consider, among another things, (1) the results achieved; (2) the risk undertaken by Class counsel in pursuing the case; (3) the market rate for similar representations; and (4) the nature of the representation, including whether it was executed on a contingency basis.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 1048-50 (9th Cir. 2002).

### A. The Results Achieved

The overall result and benefit to the Class from the litigation is considered the "most critical" factor in granting a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1933).  Here, Class Counsel has potentially achieved recovery for the class.  The immediate and significant impact of the Settlement Amount on its members supports the award of 33% fees.

### B. The Risks of Litigation

When evaluating an award of attorneys' fees, the Court considers whether protracted and contentious litigation could jeopardize the awards for Class members.

*Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048. For example, a court may consider the complexity of the legal issues involved and defenses to the merits of the practices by the Defendants. *Omnivision*, 559 F. Supp. 2d at 1046-47. Hartford poised itself to vigorously litigate its position given its early briefing practices. There is a real risk that if this case were not settled through negotiation, class members would be unable to recover at all.

### C. The Skill and Quality of Class Counsel's Work

Class Counsel's experience and dedication resulted in class members winning a favorable resolution. Because of Class Counsel's diligent efforts, the parties reached a Settlement that will compensate class members without the risk of lengthy and costly litigation.

### 2. The Lodestar Cross-Check

The Court will apply a lodestar cross-check to ensure the reasonableness of the award. *Vizcaino,* 290 F.3d at 1047; *see, e.g., Nwabueze v. AT&T, Inc.,* No. C 09-01529 SI, 2014 WL 324262, at *3 (N.D. Cal. Jan. 29, 2014); *Ontiveros,* 303 F.R.D. 356, 372 (E.D. Cal. 2014).

In its calculation, the Court multiplies the amount of hours the prevailing party expended on litigation by a reasonably hourly rate. *Bluetooth*, 654 F.3d at 941. The figure may be adjusted to reflect a variety of 'reasonableness' factors, including, but not limited to, the level of representation, the benefit obtained for the class, the complexity of the factual and legal issues presented and the risk of nonpayment of the parties. *Id.* at 941-42.

Courts should only award fees based on the number of hours reasonably expended on the litigation and not hours that are excessive, redundant, or unnecessary. *Hensley,* 461 U.S. at 433-34. In determining a reasonable number of hours, courts have discretion to make an equitable judgment rather than apply a precise rule or formula. *Id*. at 436-37. Once the lodestar is determined, the court divides or

multiplies the total fees sought by the lodestar to ascertain a multiplier, the purpose of which is to account for the risk counsel assumes when they take on a contingent-fee case. *See Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013). The following factors are relevant to determine whether or not a multiplier is appropriate: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id*.

Applying the lodestar method here, Class Counsel calculates its attorneys' fees to be $402,752.50. Corby Decl. Exhs. D, E. Class Counsel's requested fee award represents a multiplier of approximately 1.23. Courts have approved greater multipliers as fair and reasonable. *See, e.g., Vizcaino*, 290 F.3d at 1050-51. Class Counsel has adequately demonstrated that claims were necessarily incurred for the prosecution of this case. The Court's review of the time billed to this case leads it to conclude the estimated lodestar is reasonable.

    **e. Lead Counsel's Request for Reimbursement of Litigation Costs and Expenses**

Litigation costs are ordinarily included in an award of attorneys' fees pursuant to the Fair Labor Standards Act. *Wales v. Jack M. Berry,* Inc., 192 F. Supp. 2d 1313, 1329 (M.D. Fl. 2001). Class counsel requests reimbursement for the $22,519.87 it advanced in litigation costs and expenses which included court filing fees, E-service fees, postage and courier fees, telephonic conferences, research materials, expert fees, and mediator costs. These expenses are typically recoverable. *Odrick v. Union*

*Bancal Corp.*, No. CV 10-05565 SBA, 2012 WL 6019495 at *6 (N.D. Cal. Dec. 3, 2012) (approving expenses "for a retained expert mediation, travel, copying, mailing, legal research, and other litigation-related costs"); *Rutti v. Lojack Corp.*, No. CV 06-00350 DOC, 2012 WL 3151077 at *12 (C.D. Cal. July 31, 2012) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."). The Court therefore **GRANTS** Plaintiff's request for reimbursement for these costs.

### f. Plaintiff's Incentive Award

Class counsel requests an incentive award of $10,000 be awarded to Lead Plaintiff. "[T]he rationale for making enhancement or incentive awards to named plaintiffs is that he or she should be compensated for the expense or risk he has incurred in conferring a benefit on other members of the class." *Clark v. Am. Residential Servs. LLC*, 175 Cal. App. 4th 785, 806-807 (2009). Here, Lead Plaintiff engaged in more than 50 hours of work on behalf of the putative class. Corby Decl., Ex. H. A modest increase in Lead Plaintiff's award to $10,000 is reasonable given the efforts expended to win settlement.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motions for Final Approval of Settlement and Attorneys Fees and Expenses.

**IT IS SO ORDERED.**

Dated: January 14, 2019

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

16.